# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

WILLIE CARTER, III,                    :            Case No. 03:12 CV 632

     Petitioner,                    :

vs.                                    :

NORMAN ROBINSON, WARDEN,               :            **MAGISTRATE'S REPORT AND
                                                    RECOMMENDATION**

     Respondent.                   :

## I. INTRODUCTION

This case was automatically referred to the undersigned Magistrate Judge for report and recommendation pursuant to 72.2(b)(2) of the UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF OHIO LOCAL CIVIL RULES.  Pending are the Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254, Respondent's Return of Writ, Petitioner's Traverse and Respondent's Appendix to the Return of Writ (Docket Nos. 1, 7, 8 and 9).  For the reasons set forth below, the Magistrate recommends that the Court deny the Petition for Writ of Habeas Corpus.

## II. FACTUAL BACKGROUND.

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  28 U. S. C. § 2254(d)(1) (Thomson Reuters 2012).  The applicant shall have the burden of rebutting the presumption of correctness by clear and

convincing evidence. *Hardaway v. Withrow,* 305 F.3d 558, 563 (6th Cir. 2002) (*citing* 28 U.S.C. § 2254(e)(1)).  This statutory presumption of correctness extends to factual findings made by state appellate courts on the basis of their review of trial court records.  *Id.* (*citing Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir.2001) (*citing Sumner v. Mata*, 101 S.Ct. 764, 768-769 (1981)).

In this case, the Court of Appeals of Lucas County made the following factual findings. These facts were uncontroverted.

> Petitioner served as the "Grant Sheik" for a quasi-religious, but mostly criminal, organization known as the Blackstone Rangers (BR).  In 1996, BR membership consisted of eighteen persons who operated from a house in Toledo known as the "Temple."
>
> On August 18, 1996, Petitioner presided over the initiation of eleven persons who sought BR membership.  After administering the oath, Petitioner announced that he would individually interview each new inductee.  Newly inducted Destiny Elmore was the first interviewee.  Believing that Ms. Elmore had confided in her boyfriend of Petitioner's participation in a robbery, witnesses testified that Petitioner strangled Ms. Elmore with a belt until her face was blue, her eyes bulging and her body was motionless.  When Petitioner emerged from the room where he was interviewing Ms. Elmore, he advised all members that they, too, could be murdered for divulging gang business.  Ms. Elmore's body was disposed of near an urban overpass where she was discovered by police two days later.
>
> On December 3, 1996, Lamontie Gist a.k.a. Cheese asked Edward King, a.k.a. Little E, if he could borrow his firearm for the purpose of stealing five pounds of marijuana from Roxanne Torres.  Little E persuaded Cheese that he could use his firearm if Little E were permitted to participate in the robbery.  In the basement of the Temple, Ms. Torres was relieved of the marijuana by Cheese and Little E.  Subsequently, Petitioner and other BRs relieved Cheese and Little E of the firearm and the marijuana.  Little E returned to the Temple on the following morning to retrieve his firearm and his share of the marijuana.  Later that day, Police found Little E's body in an alley.
>
> A few days later, Petitioner was stopped by police.  A search of the vehicle in which Petitioner was riding had a gun hidden behind the seat.  Petitioner claimed that it was his gun.  Initially, Petitioner was arrested for carrying a concealed weapon.  Once the investigation turned to Petitioner about King's murder, several of the Rangers began to point to Petitioner as the murderer [of Ms. Elmore and

2

Little E].

(Docket No. 9, pp. 61-64 of 233).

### III. PROCEDURAL BACKGROUND.

1.    LUCAS COUNTY COURT OF COMMON PLEAS, CASE NO. CR 01997-1111.

The jurors of the Grand Jury of the State of Ohio, during the January term of 1997 filed

the following indictment as to Petitioner:

| COUNT | CHARGE | STATUTORY AUTHORITY |
|---|---|---|
| 1. | Aggravated murder | A violation of OHIO REV. CODE § 2903.01(A). |
| 2. | Aggravated murder | A violation of OHIO REV. CODE § 2903.01(A). |
| 3. | Aggravated robbery | A violation of OHIO REV. CODE § 2911.01(A)(1). |
| | *Firearm specification* | A violation of OHIO REV. CODE §§ 2929.71 & 2941.141. |
| 4. | Involuntary Manslaughter | A violation of OHIO REV. CODE § 2903.04(A). |
| | *Firearm specification*. | A violation of OHIO REV. CODE §§ 2929.71 & 2941.141. |
| 5. | Burglary | A violation of OHIO REV. CODE § 2911.12(A)(3). |
| 6. | Conspiracy to Commit Aggravated Murder | A violation of OHIO REV. CODE § 2923.01. |

(Docket No. 9, pp. 4-10 of 233).

During a pretrial conducted on February 14, 1997, Judge Charles S. Wittenberg severed

Counts 3 and 4 for a separate trial because the counts of aggravated robbery and voluntary

manslaughter arose from an incident that occurred in 1994 (Docket No. 9, pp. 155-156 of 233).

On March 17, 1997, a second pretrial was conducted, at which Judge Wittenberg scheduled

Counts 3 and 4 for a separate trial date (Docket No. 9, pp. 180-181; 198-199 of 233).

A jury trial on Counts 1, 2, 5 and 6 resulted in a guilty verdict on all counts (Docket No.

9, p. 61 of 233). On July 11, 1997, Petitioner, by and through counsel, filed a motion for a new

trial, based on new evidence that a witness lied as to Petitioner's involvement in these crimes

(Docket No. 9, pp. 13-14 of 233). On August 13, 1997, Judge Wittenberg denied the motion for

a new trial, set aside the conspiracy to commit aggravated murder conviction in Count 6 and

3

entered the following sentence for Counts 1, 2 and 5:

| | |
|---|---|
| Count One | A term of life imprisonment with parole after twenty years. |
| Count Two | A term of life imprisonment with parole after twenty years. |
| Count Five | Four years. |

The sentences were ordered to be served consecutively to each other and the sentence ordered in Case No. 97-1330 [described below] (Docket No. 9, pp. 18-19 of 233).

### 2.  LUCAS COUNTY COURT OF COMMON PLEAS, CASE NO. CR 01997-1330.

The jurors of the Grand Jury of the State of Ohio, during the January term of 1997, filed the following one count indictment as to Petitioner:

Carrying a concealed weapon     A violation of OHIO REV. CODE § 2923.12(A).

(Docket No. 9, p. 11 of 233).

On August 13, 1997, Judge Wittenberg advised Petitioner of his rights under OHIO CRIM. R. 32, and then sentenced Petitioner to serve a term of twelve months, to be served consecutive to the sentence imposed in CR 97-1111 [described above] (Docket No. 9, pp. 15-16 of 233).

Petitioner filed a notice of appeal in the common pleas court on September 12, 1997 and in the court of appeals on September 17, 1997 (Docket No. 9, p. 25 of 233).

### 3.  LUCAS COUNTY COURT OF COMMON PLEAS, CASE NO. CR 01997-2705.

Counts 3 and 4 of the Indictment entered during the January 1997 term were assigned to Case No. 01997-2705.  On September 16, 1998, Petitioner appeared in open court where he waived his right to trial by jury, withdrew his earlier plea of not guilty and entered a negotiated plea of guilty to Count 3, the offense of aggravated robbery with a firearm specification.  Judge Robert G. Christiansen entered a *nolle prosequi* as to Court 4, the offense of involuntary manslaughter and the specification attached thereto.  Petitioner was committed to the Ohio Department of Rehabilitation and Corrections for a period of ten to twenty-five years as to the

aggravated robbery charge and three years (mandatory) as to the firearm specification, to be served consecutively with, but prior to, the aggravated robbery sentence, until released according to law. This sentence was to be served concurrently with the other sentences being served by Petitioner (Docket No. 9, pp. 22-23 of 233).

4.      Consolidated appeal of CR 01997-1111 and CR 97-1330

Petitioner filed a notice of appeal in the court of appeals on September 4, 1997 (Docket No. 9, p. 24 of 233). The court of appeals entered a decision and judgment entry on June 12, 1998, consolidating the cases for appeal as the criminal charges were tried together (Docket No. 9, p. 26 of 233). Two assignments of error presented in the brief on the merits were:

1.     Whether Petitioner was denied the effective assistance of counsel as guaranteed by the Sixth Amendment of the United States Constitution and the Constitution of the State of Ohio.

2.     Whether the trial court erred by its failure to sever Petitioner's [case from that of his co-defendants].

(Docket No. 9, p. 28 of 233).

On March 10, 2000, the court of appeals affirmed the judgment of the trial court in both cases, finding that Petitioner's first and second assignments of error were not well taken (Docket No. 9, pp. 61-68 of 233).

5.      Post-conviction Motion filed in Cases CR 01997-1111 and CR 1997-2705.

On November 12, 2010, Petitioner, *pro se*, filed a "motion for sentencing" in the Lucas County Court of Common Pleas. There he argued that his sentence was void by operation of law and his plea a nullity since the court failed to impose mandatory post-release control (Docket No. 9, pp. 69-75 of 233).

Represented by counsel and appearing by video connection to Ross Correctional

5

Institution, on December 20, 2010, Petitioner's "motion for re-sentencing" and request for an order imposing post-release control responsibilities came on to be heard before Judge Denise Ann Dartt.  Judge Dartt found the "motion for re-sentencing" not well-taken and entered an order memorializing her denial of the motion on December 30, 2010 (Docket No. 9, p. 80 of 233).

On January 3, 2011, Judge Linda J. Jennings conducted a video conference during which she ordered the same sentence as to Counts 1, 2 and 5 and in addition, imposed the following post-release control responsibilities:

1.      Five years mandatory post-release control as to Count One.
2.      Five years mandatory post-release control as to Count two.
3.      Three years discretionary post-release control as to Count five.

(Docket No. 9, pp. 81-83, 220-233 of 233).

On January 21, 2011, Petitioner, represented by Stephen D. Long, filed a notice of appeal from Judge Jennings' order in the court of common pleas and the court of appeals[1] (Docket No. 9, pp. 85-86; 220-233 of 233).

On April 4, 2011, Mr. Long notified Petitioner of his intent to withdraw subject to court approval[2] and contemporaneously requested leave of court to withdraw as counsel pursuant to *Anders v. California* in the court of appeals[3] (Docket No. 9, pp. 91-93, 94-95 of 233).  On April

---

[1]

Counsel did not file a brief on the merits; consequently, no issues regarding the validity or severity of his sentence was presented on direct appeal.

[2]

Mr. Long was candid with Petitioner, advising him that the trial court committed no errors with respect to his re-sentencing and he had no legally cognizable argument that he could make on Petitioner's behalf.  Therefore, he was requesting that the court grant him leave to withdraw.

[3]

The constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of amicus curiae. *Anders v. State of California*, 87 S.Ct. 1396, 1399 (1967).  His role as advocate requires that he support his client's appeal to the best of his ability.  *Id.*  Of course, if counsel finds his case to be wholly frivolous, after

6

7, 2011, the State of Ohio responded, urging the court to permit counsel's withdrawal because there was no arguable basis for any valid assignment of error (Docket No. 9, pp. 102-107 of 233).  On May 17, 2011, Petitioner filed a motion and memorandum contra in the court of appeals, alleging:

1.  The court should overrule appointed counsel's request to withdraw.
2.  He had a right to the appointment of new counsel.
3.  The court should remand the matter for a *de novo* sentencing hearing as contemplated in the controlling authorities of *State v. Bedford,* 2009 WL 2448260 (2009); *State v. Hofmann*, 2004 WL 2848938 (2004); *State v. Schmidt*, 175 Ohio Ap. 3d 600; and *State v. Scott,* 2010 WL 334974 (2010).

(Docket No. 9, pp. 108-110 of 233).

On September 16, 2011, the court of appeals affirmed the conviction, including the post-release control responsibilities and further decided that the motion to withdraw should be granted (Docket No. 9, pp. 111-118 of 233).

Petitioner, *pro se*, filed a notice of appeal in the Supreme Court of Ohio from the September 16, 2011 judgment (Docket No. 9, pp. 118-119 of 233).   Petitioner filed a memorandum in support of jurisdiction on October 20, 2011, arguing that:

1.  It is constitutional error of the first magnitude for a trial court to both give retroactive force and effect to a judicial ruling, *State v. Fischer*, 128 Ohio St. 3d 92 (2010), and to deny a required *de novo* sentencing in direct conflict with the holding in *State v. Singleton*, 124 Ohio St. 3d 173 (2009), with respect to a facially void judgment.  *See* U. S. C. Const. amend. 14; and *State v. Jordan*, 104 Ohio St. 3d 21 (2004)[4].

2.  It is a violation of due process and a violation of the right to counsel for an appellate court, when faced with an *Anders* brief, to find appealable issues and yet fail to appoint substitute counsel.  *See* U.S.C. Const. amend. 6 and 14; and *Anders v. California*, *supra*.

(Docket No. 9, p. 121 of 233).

---

a conscientious examination of it, he should so advise the court and request permission to withdraw.  *Id.*

[4]

In *State v. Jordan*, paragraph two the syllabus explains that this case is superseded by statute as discussed in *State v. Singleton*.

7

On January 18, 2012, Supreme Court of Ohio's Chief Justice Maureen O'Connor denied Petitioner leave to appeal and dismissed the appeal as not having any substantial constitutional question (Docket No. 9, p. 143 of 233).

**6.      PETITION FOR WRIT OF HABEAS CORPUS.**

In the Petition for Writ of Habeas Corpus filed in this Court on March 14, 2012, Petitioner asserted the following grounds for relief as well as supporting facts:

1.      Conviction obtained in violation of the Sixth and Fourteenth Amendments to the United States Constitution with respect to "penalty phase errors" rendering the resulting attempted judgment *void ab initio*.
        <u>Supporting Facts</u>:
        Because the underlying sentence was void from its inception and all proceedings founded on the void judgment are invalid and a nullity, Respondent does not possess that requisite lawful privilege to continue Petitioner's confinement.

2.      Conviction obtained in violation of the Sixth Amendment right to counsel and a Fourteenth Amendment right to due process of law.
        <u>Supporting Facts</u>:
        The right to counsel attaches to an appeal as of right.  In this case, appointed counsel failed to argue on appeal that the five-year period of mandatory post-release control on the special felonies patently exceeded the statutory requirements and rendering that attempted sentence was a mere nullity and void.

(Docket No. 1, pp. 6-13 of 14).

Respondent contends that:

1.      Petitioner's first and second claims are procedurally defaulted.
2.      Not only is Petitioner's ineffective assistance of counsel claim barred by default, it also fails as cause for the default.
3.      Petitioner's sentencing claim is not cognizable.

In his Traverse, Petitioner argues that:

1.      The use of videoconference at re-sentencing did not conform to the requirements of CRIM. R. 43 and its use voids the conviction.
2.      The judicial certifications required under CRIM. R. 25 were never made and prejudice systematically attached.

3.  *State v. Fischer*[5] was decided three days after Petitioner was re-sentenced so its presumption of correctness was not material to the determination of his sentence as it alters adversely his sentence[6].

## IV. HABEAS STANDARD OF REVIEW.

There is a one year statute of limitation that applies to the application of a writ of habeas corpus filed by a person in custody pursuant to a state court. *Keeling v. Warden, Lebanon Correctional Institution*, 673 F.3d 452, 458 (6th Cir. 2012) *cert. denied*, 133 S. Ct. 141 (2012) (*citing* 28 U.S.C. § 2244(d)(1)).  This statute of limitations begins to run from the latest of:

(A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* at 458-459 (*citing* 28 U.S.C. § 2244(d)(1)(A)–(D)).

A timely filed application for a writ of habeas corpus on behalf of a person in custody shall not be granted with respect to any claim adjudicated on the merits in state court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable

---

[5]

The Supreme Court of Ohio held that when a judge fails to impose statutorily mandated post-release control as part of a defendant's sentence, that part of the sentence that was void must be set aside, and defendant's remaining claims, which did not involve a void sentence or judgment, were barred by res judicata. *State v. Fischer*, 128 Ohio St.3d 92, 942 N.E.2d 332 (2010) (*overruling State v. Bezak*, 114 Ohio St.3d 94, Ohio-3250, 868 N.E.2d 961 (2007)).

[6]

None of these ideas were ever presented in an appeal to the state courts.  Neither has Petitioner asserted these suggestions as an excuse for his failure to comply with any of the habeas procedural requirements.

application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (Thomson Reuters 2012).

A decision is "contrary to" clearly established federal law when the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Holder v. Palmer*, 588 F. 3d 328, 343 (6th Cir. 2009) (*citing Williams v. Taylor*, 120 S. Ct. 1495, 1523 (2000)).  A state court decision will be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases. *Id.* (*citing Williams*, 120 S.Ct. at 1523) (emphasis added).

A decision is an unreasonable application of clearly established federal law if it identifies the correct principle of law but unreasonably applies it. *Williams v. Coyle,* 260 F.3d 684, 699 (6th Cir. 2001) (*See Williams v. Taylor, supra*, 120 S. Ct. at 1519).  "[A]n unreasonable application of federal law is different from an incorrect application of federal law.... *Id.*  Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue [a] writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. *Id.*  Rather, that application must also be unreasonable." *Id.* (*citing Williams v. Taylor, supra*, 120 S.Ct. at 1521) (original emphasis)).

As a condition for obtaining habeas relief from the federal court, a state prisoner must show that the state court's decision was so lacking in justification that there was an error well

10

understood and comprehended in existing law beyond any possibility for fairminded disagreement. *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011). This bar is difficult to meet because "'habeas corpus is a guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (*citing Jackson v. Virginia*, 99 S.Ct. 2781, 2795, n.5 (1979)).

## V. ANALYSIS.

It is well established that a district court may decide all claims that are exhausted and not time-barred where it would not be futile to return the claim to state court. In the case at hand, the decision affirming the conviction became final on the ninety first day after which Petitioner could no longer seek review by the Supreme Court of the United States. Petitioner filed his instant Petition prior to the expiration of the April 18, 2012-deadline. Therefore, the Petition for Writ of Habeas Corpus was timely filed under 28 U.S.C. § 2244(d)(1)(A). The situation in this case arises where the doctrines of procedural default and exhaustion intertwine with the issues presented by Petitioner in the Petition for Writ of Habeas Corpus.

**1.     THE LAW --EXHAUSTION.**

The ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT (AEDPA), 28 U. S. C. § 2254, places a constraint on the power the federal habeas court has to grant an application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. *Doan v. Carter*, 548 F. 3d 449, 454 (6th Cir. 2008) *cert. denied,* 130 S. Ct. 366 (2009) (*citing Williams v. Taylor*, *supra,* 120 S. Ct. at 1523). When a habeas petitioner fails to obtain consideration of a claim by a state court, either due to the petitioner's failure to raise that claim before the state courts while state court remedies were still available or due to a state procedural rule that prevented the state courts from reaching the merits of the claim, that claim is procedurally

defaulted. *Seymour v. Walker*, 224 F.3d 542, 549–550 (6th Cir.2000). A federal court will review a defaulted claim only if a petitioner "show[s] that there was cause for the default and prejudice resulting from the default, or that a miscarriage of justice will result from enforcing the procedural default." *Id*. at 550.

"[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Cvijetinovic v. Eberlin,* 617 F.3d 833, 837 (6th Cir. 2010) *cert. denied,* 131 S. Ct. 1518 (2011) (*citing Murray v. Carrier,* 106 S. Ct. 2639, 2645 (1986); *see also Shorter v. Ohio Department of Rehabilitation and Corrections*, 180 F.3d 723, 726 (6th Cir.1999) (noting that petitioner had failed to demonstrate cause because his "[c]ounsel's efforts to comply with the State's procedural rule were not impeded by some objective factor external to the defense")). "Such factors may include 'interference by officials,' attorney error rising to the level of ineffective assistance of counsel, and 'a showing that the factual or legal basis for a claim was not reasonably available.' " *Id*. (*citing Hargrave–Thomas v. Yukins*, 374 F.3d 383, 388 (6th Cir. 2004) (*quoting McCleskey v. Zant*, 111 S.Ct. 1454, 1469 (1991)).

### A. PETITIONER'S FIRST CLAIM– WAS HIS SENTENCE VOID?

The exhaustion rule has created a strong presumption in favor of requiring Petitioner to pursue his available state remedies prior to resorting to the federal courts for habeas corpus relief as this is not the forum for trying facts and issues which Petitioner failed to pursue in state proceedings. This means that Petitioner was required to squarely present the specific issues, describe operative facts and assert legal theories underlying his claims that he planned to submit in this Court to the highest state court, either on direct review of the conviction or in a post-conviction attack that proved his conviction was riddled with penalty phase errors that rendered

12

his sentence void.

Petitioner challenged the propriety of these decisions in the state courts; however, he did not challenge whether his conviction was obtained in violation of the Sixth and Fourteenth Amendments to the United States Constitution with respect to the alleged penalty phase errors in the state courts. Having not offered any explanation as to why this first claim was not raised in the state courts when it could and should have been, Petitioner has procedurally defaulted his first claim and the first claim is not amenable to habeas corpus review.

### B. PETITIONER'S SECOND CLAIM– WAS HE ENTITLED TO THE APPOINTMENT OF COUNSEL?

Petitioner's second federal habeas claim is more appropriately divided into two claims: (1) the right to the appointment of counsel claim and (2) the ineffective assistance of counsel claim. Hereafter, the Magistrate considers Petitioner's ineffective assistance of counsel claim as his third claim. Petitioner presented the second claim to the court of appeals and the Supreme Court of Ohio. He presented a variation of this claim to this Court for habeas review. Regarding his third claim, Petitioner failed to present his ineffective assistance of counsel claim to any of the underlying courts. However, the Magistrate considers this claim to the extent that it can establish a basis for establishing cause for the failure to present this claim to the state courts.

As to Petitioner's right to the appointment of counsel, the Magistrate has weighed the decision and facts in the *Anders* case and compared them with the facts of this case. In *Anders, supra,* the United States Supreme Court reasoned that the constitutional requirement of equality and a fair process requires counsel in the role of advocate, to conduct a conscientious examination of the case and he or she should advise the court and request permission to withdraw if the case is frivolous. 87 S. Ct. at 1400. While an indigent whose appeal is frivolous

has no right to have an advocate make his case to the appellate court, such an indigent does, in all cases, have the right to have an attorney, zealous for the indigent's interests, evaluate his case and attempt to discern non-frivolous arguments. *Id.* Moreover, the OHIO CODE OF PROFESSIONAL RESPONSIBILITY requires that an attorney bring cases within the bounds of the law.

Appellate counsel's *Anders* brief showed that the underlying sentence was not void; however, the trial court was required to supplement its judgment by imposing mandatory post-release control. Once the sentencing was completed, counsel thoroughly examined the record to the best of his ability in search of issues that might arguably support an appeal pertaining to the narrow issue of Petitioner's mandatory post-release control. Then counsel advised Petitioner and the court that the claims were frivolous and he requested withdrawal. Assuredly the court could not force another attorney to advance an argument which he or she ethically should not bring and under the disciplinary rules and perhaps subject himself or herself to sanctions. The Magistrate is not persuaded by independent case law and Petitioner has failed to present clearly established Supreme Court authority which obligates the court to appoint appellate counsel in a proceeding that was wholly frivolous. In fact, the existing clearly established Supreme Court case of *Anders* suggests the opposite.

C. PETITIONER'S THIRD CLAIM-WAS COUNSEL INEFFECTIVE?

It is evident that Petitioner did not contemplate the loss of counsel during the appeal and it is undisputed that there was nothing to prevent him from raising counsel's ineffectiveness with the court of appeals in his direct appeal or in a delayed appeal to the Supreme Court of Ohio. But he never presented an ineffective assistance of counsel claim to the state courts. Petitioner is silent as to why he failed to present this unexhausted claims to establish good cause. And the

14

record fails to reveal the existence of any reason, let alone one reason which shows that the procedural default of his ineffective assistance of counsel claim was the result of external factors that impeded his efforts to comply with the state's procedural rules.

The only cause suggested for Petitioner's procedural default is that but for counsel's withdrawal, his claims would have been presented on appeal.  Petitioner cannot rely on the ineffective assistance of counsel to excuse his default for the simple reason that the ineffectiveness must itself amount to a violation of the Sixth Amendment and therefore must be both exhausted and not procedurally defaulted.  *Burroughs v. Makowski,* 411 F. 3d 665, 668 (6th Cir. 2005).  Petitioner's failure to establish cause to excuse his default eliminates the need to consider prejudice.

2.      **THE LAW--PROCEDURAL DEFAULT.**

A petitioner procedurally defaults claims for habeas relief if the petitioner has not presented those claims to the state courts in accordance with the state's procedural rules.  *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir.2000) (*citing Wainwright v. Sykes*, 97 S. Ct. 1497, 2506 (2000)).   Where the issue is whether a federal habeas corpus claim is waived by a petitioner's failure to comply with a state procedural rule, this court uses a four-part analysis.  *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.1986).

Under *Maupin*, the federal habeas court must first determine whether there is a state procedural rule that is applicable to the petitioner's claim and whether the petitioner failed to comply with the state procedural rule.  *Id.*  Second, the federal court must decide whether the state courts actually enforced the state procedural sanction.  *Id.*  Third, the federal court must decide whether the state procedural default is an adequate and independent state ground upon which the state can rely to foreclose review of the federal habeas claim.  *Id.*  Fourth, the habeas

15

petitioner is required to demonstrate cause and prejudice:  that there was cause for him not to comply with the state procedural rule and that he was actually prejudiced by the alleged error. *Id*.

To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law.  *Coleman v. Thompson*, 111 S.Ct. 2546, 2555 (1991).  To be "adequate," a state procedural rule must be firmly established and regularly followed."  *Parker v. Bagley,* 543 F.3d 859, 861 (6th Cir. 2008) (*citing Fautenberry v. Mitchell*, 515 F.3d 614, 640 (6th Cir.2008) (*quoting Hutchison v. Bell*, 303 F.3d 720, 737 (6th Cir.2002)). In other words, the court must ask "whether, at the time of the petitioner's actions giving rise to the default, the petitioner could  . . .  be deemed to have been apprised of the rule's existence." *Id*. (*quoting Hutchison*, 303 F.3d at 737).

The Court of Appeals for the Sixth Circuit has consistently held that Ohio's doctrine of *res judicata* is an adequate ground for denying federal habeas relief.  *Coleman v. Mitchell*, 268 F.3d 417, 427-29 (6th Cir.2001).  The determination of whether a state procedural rule is an adequate ground for denying relief necessarily focuses on the procedural rule at issue.  *Id*.

### A.    PETITIONER'S FIRST AND THIRD CLAIMS.

Having determined that Petitioner did not raise his claim that his sentence was *void ab initio* or a claim that appellate counsel was ineffective during the appellate phase on direct appeal, the Magistrate focuses on whether both of these claims were procedurally defaulted.  To determine whether the procedural default completely bars Petitioner's instant grounds for relief, the Magistrate must apply the four-pronged *Maupin* test.  Turning to the first part of the *Maupin* test-whether Petitioner violation a state procedural rule-the Magistrate concludes that the first prong is met because under Ohio's doctrine of *res judicata*, claims appearing on the face of the

16

record must be raised on direct appeal or they will be considered waived. *State v. Perry*, 10 Ohio St. 2d 175, 180, 226 N. E. 2d 104, 108 (1967). A claim challenging counsel's failure to pursue an appeal that proved his sentence void by its very nature, appears on the face of the record. Petitioner violated Ohio's *res judicata* doctrine when he failed to raise both of these claims on direct appeal. The first part of the *Maupin* test has been met.

The second part of the *Maupin* test requires the Court to determine whether the state courts actually enforced the procedural rule. However, neither the appellate court nor the Supreme Court of Ohio was given an opportunity to enforce the *res judicata* rule. Accordingly, the Magistrate deems the second part of the *Maupin* test to have been met.

The Magistrate also finds that Ohio's unmistakable procedural rule of *res judicata* is adequate and independent under the third part of the *Maupin* test. This doctrine of res judicata serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. Ohio courts have consistently refused, in reliance on this doctrine of res judicata, to review the merits of claims. *See State v. Cole*, 2 Ohio St.3d 112, 443 N.E.2d 169 (1982); *State v. Ishmail*, 67 Ohio St.2d 16, 423 N.E.2d 1068 (1981). With respect to the independence prong, *res judicata* does not rely on or otherwise implicate federal law. Accordingly, the Magistrate is satisfied that the *res judicata* rule is an adequate and independent ground for denying relief as to claims one and three.

Beyond the four-part *Maupin* test, the Magistrate must consider whether Petitioner's default on both or either claims can be excused under the cause and prejudice test or the narrow "fundamental miscarriage of justice" gateway. A habeas petitioner can overcome a procedural default by demonstrating that "failure to consider the claims will result in a fundamental miscarriage of justice." *Williams v. Bagley,* 380 F.3d 932, 973 (6th Cir. 2004) *cert. denied,* 125

17

S. Ct. 1939 (2005) (*citing Coleman, supra*, 111 S.Ct. at 2565 (1991)). The "fundamental miscarriage of justice" gateway is open to a petitioner who submits new evidence showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* (*citing Schlup v. Delo*, 115 S.Ct. 851, 867 (1995) (*quoting Murray v. Carrier*, 106 S.Ct. 2639, 2649 (1986)). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* (*citing Schlup,* 115 S. Ct. at 867) (*quoting Murray*, 106 S. Ct. at 2649).

Here, Petitioner has not diligently pursued a claim of actual innocence. Neither has he advanced a colorable argument for actual innocence as a basis for creating an exception to procedural barriers. The Magistrate concludes that Petitioner is not entitled to have any of his claims reviewed under the actual innocence exception.

### B.    PETITIONER'S SECOND CLAIM.

When the rules of procedural default are applied to this case, Petitioner's claim that he was deprived of appellate counsel has been exhausted and therefore he has expressly complied with the factual predicate for federal review. Petitioner's point of error on this claim is reviewable and the Magistrate has already determined that Petitioner failed to demonstrate that the decision denying appellate counsel was contrary to clearly established federal law. Petitioner is not entitled to relief on this claim.

### 3.    SUMMARY.

Having failed to overcome the procedural bar to his first claim--Petitioner's conviction obtained in violation of the Sixth and Fourteenth Amendments to the United States Constitution with respect to "penalty phase errors" rendering the resulting attempted judgment *void ab initio*–and his third claim--appellate counsel failed to argue on appeal that the five-year period of

18

mandatory post-release control on the special felonies exceeded the statutory guidelines–neither claim is subject to habeas corpus review.

The second claim–Petitioner's conviction was obtained in violation of the Sixth Amendment right to counsel and Fourteenth Amendment right to due process of law–was not procedurally defaulted; however, Petitioner failed to demonstrate that the court's failure to appoint counsel for representation in an appeal deemed frivolous by counsel and the court, was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.  This claim is dismissed because it lacks merit.

## VI. CONCLUSION

For these reasons, the Magistrate recommends the Court deny the Petition for Writ of Habeas Corpus, deny the certificate of appealability and terminate the referral to the undersigned Magistrate Judge.

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date: February 19, 2013

## VII. NOTICE

Please take notice that as of this date the Magistrate Judge's report and recommendation attached hereto has been filed.  Pursuant to Rule 72.3(b) of the LOCAL RULES FOR NORTHERN DISTRICT OF OHIO, any party may object to this report and recommendations within fourteen (14) days after being served with a copy thereof.  Failure to file a timely objection within the fourteen-day period shall constitute a waiver of subsequent review, absent a showing of good

cause for such failure.  The objecting party shall file the written objections with the Clerk of Court, and serve on the Magistrate Judge and all parties, which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  Any party may respond to another party's objections within fourteen days after being served with a copy thereof.

Please note that the Sixth Circuit Court of Appeals determined in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) that failure to file a timely objection to a Magistrate's report and recommendation foreclosed appeal to the court of appeals.  In *Thomas v. Arn*, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the court of appeals to condition the right of appeal on the filing of timely objections to a report and recommendation.

20